STATE v. BYRD.

1. It is not necessary to constitute the crime of perjury under the statute (*Gen. Stat.*, ₴ 2534) that the matter falsely sworn to should be material to the issue. It is sufficient if the oath was required by law, was administered by one authorized to do so, and was wilfully and knowingly false; and its materiality not having been alleged, it was unnecessary to prove it.

2. Testimony which bears upon the location of defendant at a particular time, where such location affects the question of his guilt or innocence, is material to the issue involved.

3. An indictment charging perjury committed at a trial before a trial justice, is not defective in failing to allege that the proceeding before that officer was commenced by information under oath.

Before ALDRICH, J., Pickens, June, 1887.

The opinion states the case.

*Mr. James P. Carey*, for appellant.

*Mr. Orr*, solicitor, contra.

February 1, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. The defendant was indicted for perjury. The indictment contained two counts. The first charged that the said Albert Byrd being sworn as aforesaid (before John R. Gossett, Esq., trial justice), not having the fear of God, &c., "then and there, upon his oath aforesaid, before the said John R. Gossett, Esq., upon a certain trial entitled 'The State against Albert Byrd. Offence—refusal to work the roads,' falsely, corruptly, knowingly, wilfully, and maliciously did say, depose, swear, and give information (amongst other things), in substance

and to the effect following, that is to say, this informant (meaning the said Albert Byrd), upon his oath, sayeth : 'I did not go in opposite direction from Greenville on the morning of the fourteenth of August. I started to Greenville on the morning of fourteenth, between seven and eight o'clock,' whereas, in truth and in fact, the said Albert Byrd did, on the morning of the fourteenth day of August, in the year of our Lord one thousand eight hundred and eighty-five, go in an opposite direction from Greenville, and did not start to Greenville on the said morning, &c., *contrary to the form of the statute in such case made, &c."*

The second count charged : "That upon the hearing of the trial before the said John R. Gossett, Esq., as aforesaid, it became and was a material question whether the said Albert Byrd was exempt from road duty by reason of his absence to Greenville on the morning of fourteenth of August, eighteen hundred and eighty-five, and the continuation of such absence during the remainder of said day, the jurors aforesaid do say, that the said Albert Byrd, on the nineteenth day, &c., &c., before the said John R. Gossett, Esq., by his own act and consent, and of his own wicked and corrupt mind, in manner and form aforesaid, falsely, wickedly, wilfully, and corruptly did commit wilful and corrupt perjury, to the evil and pernicious example of all others in like case offending, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State aforesaid," &c.

The judge held that the defendant was indicted under our acts of assembly, and charged the jury that the only inquiry for them was whether the defendant "knowingly and wilfully swore falsely before an officer required by law to administer oaths. Did he swear falsely, in the way in which the trial justice says he did, and the way in which the indictment charges? If he did, the case is made out; if he did not, the case is not made out, and he is not guilty," &c. The jury found the defendant "guilty," and he appeals to this court upon the following grounds :

"I. Because the Circuit Judge erred in refusing to charge 'that if the jury believe from the testimony that the defendant in good faith attended the U. S. Court on August 14, 1885, to answer there for a criminal charge, the particular direction which he

started or the particular hour is immaterial, and they should acquit him.'

"II. Because the judge erred in instructing the jury that the defendant was not indicted under the common law, but under our acts of assembly.

"III. Because the judge erred in instructing the jury that the only inquiry for them was, has the defendant knowingly and wilfully sworn falsely before an officer required by law to administer oaths? whereas he should have qualified said instruction by stating that the facts sworn to must be material to the issue pending before the said officer.

"IV. Because his honor erred in overruling the defendant's motion in arrest of judgment on the following grounds: 1. That the indictment is fatally defective in that it does not allege that the proceeding before the trial justice was commenced on information under oath. 2. That the indictment does not state an offence under the law."

·. It appears from the request to charge and the exceptions, as well as from the grounds taken in arrest of judgment, that the real complaint of the defendant is that the conviction was error, for the reason that his sworn statement in the proceedings against him for not working on the road as to his starting that morning in the direction of Greenville and at an early hour, was immaterial to the issue then being tried, as to whether he was exempt that day from working the roads; that even if the statement was, as alleged, false, he might still have gone to Greenville, and, therefore, the testimony, although false, was not sufficient to support a conviction for perjury. Possibly the statement that he left that morning at an early hour in the direction of Greenville, taken alone, might not be sufficient to establish conclusively the fact that he went to Greenville that day so as to excuse him from road duty; but it seems to us that the statement was made for that purpose, and it certainly tended in that way, and was sworn evidence calculated to disprove the charge as to his refusal to work on the roads. We do not think that this false testimony can be said to have been entirely immaterial to the question in issue. The second count in the indictment charged expressly that the oath in the proceedings for default in not working the

roads affected the material question, whether the said defendant was exempt from road duty by reason of his absence at Greenville. But it is not in express terms so alleged in the first count; and as the presiding judge held that the defendant was indicted under our acts of the general assembly, and limited his charge to that view, we think the defendant is entitled to have the inquiry on appeal confined to the first count, which manifestly was intended to charge the statutory offence.

There can be no doubt that perjury was always an offence at the common law. Hawkins defined it as follows: "Perjury, by the common law, seemeth to be a wilful false oath by one who, being lawfully required to depose the truth in any proceeding in a course of justice, swears absolutely in a matter of some consequence to the point in question, whether he be believed or not," &c. 2 *Bish. Crim. Law*, § 1015, and notes. It seems to have been necessary that it should appear on the face of the indictment that the false oath was material, or, as Hawkins puts it, "a matter of some consequence to the point in question." If the materiality was expressly averred in the indictment, it was necessary to prove it. But it was not necessary that it should be expressly alleged, if it otherwise appeared that the words were material "either by the context of the indictment or by their own import." *State* v. *Hayward*, 1 *Nott & McC.*, 553. It was held that to be material it was not necessary that the testimony should be of itself sufficient to produce the wrong result, but it was enough if it was a part or link in a chain of evidence tending to that end. 2 *Bishop*, section 1032, and authorities.

But in 1833 the legislature of this State passed an "act concerning perjury," which (re-enacted as section 2534 of the General Statutes) provides as follows: "Whoever shall wilfully and knowingly swear falsely, in taking any oath required by law and administered by any person directed or permitted by law to administer such oath, shall be deemed guilty of perjury, and, on conviction, incur the pains and penalties of that offence." It will be observed that there is nothing in this act as to the necessity that the false swearing denounced should be material to the issue in a judicial proceeding. The only requirements are that the oath shall be required by law, administered by one authorized

to do so, and that it was wilfully and knowingly false. The judge read this law to the jury and charged accordingly. The jury rendered a verdict of guilty, and that must be taken as conclusive of the fact that, in the matter indicated, the defendant swore falsely, "wilfully and knowingly."

We do not see that the indictment under the statute was fatally defective because it did not charge that the proceeding before the trial justice "was commenced on information under oath." Express power is given to all trial justices to administer any oath authorized or required by law to be taken, and not directed to be administered by another authority. *Gen. Stat.*, § 847. "The indictment need not allege that the court at which the oath was taken had jurisdiction of the subject-matter of the suit; it is sufficient to allege that the action to which the discount was set up was by summary process." *The State* v. *Farrow*, 10 *Rich.*, 165.

This case is not altogether analogous to that of *The State* v. *Kennerly* (10 *Rich.*, 154), cited and relied on by the defendant's counsel. In that case there was in reality no indictment under the statute—both counts were held to charge perjury at common law, while in this the first count charged clearly the offence created by the statute. In the case of Kennerly, Judge Wardlaw, in delivering the judgment, said: "Either count sufficiently charges a common law perjury, and the conclusion *cont. form. stat.* may be struck out as surplusage. But the conviction under the common law cannot be sustained, for the jury were instructed that the materiality of the matter falsely sworn to need not be investigated. By the common law the oath must be material to the question depending. It is not necessary that it should be directly material in substance to the very issue pending, for it may be only circumstantially and remotely pertinent; it may only affect the credit to be given to the witness, or serve to aid other more important evidence. If, however, it is wholly foreign to the purpose, perjury cannot grow out of it. The attempt has been made to sustain the conviction, without inquiry into materiality, by the act of 1833. That act is supposed to have introduced a new definition or description of the crime of perjury, according to which it is sufficient to show false swearing in an oath required by law and administered by a competent person,

and unnecessary to allege or prove the materiality. Admitting this, the conviction here was wrong, for here the materiality is alleged, and the allegation, although beyond what was necessary, must be proved," &c.

In the case at bar there was no such allegation in the first count, and there was no necessity to make proof of it. Besides, we cannot say that the matter of the oath alleged to be false was wholly immaterial to the issue in which it was made.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.